```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- x
MICHAEL GOMES,                                    :
                                                  :
                        Plaintiff,                :
                                                  :         **MEMORANDUM AND ORDER**
            -against-                             :         11-CV-1005 (DLI)(MDG)
                                                  :
MARY E. REILLY,                                   :
                                                  :
                        Defendant.                :
----------------------------------------------------------- x
```

**DORA L. IRIZARRY, United States District Judge:**

This action arises from a motor vehicle accident between Michael Gomes ("Plaintiff") and Mary E. Reilly ("Defendant"). Specifically, Plaintiff alleges that, on August 31, 2010, Defendant negligently came into contact with Plaintiff's foot by driving over it and caused Plaintiff to sustain serious injuries within the meaning of Section 5102(d) of the New York State Insurance Law (the "No-Fault Law"). Plaintiff seeks recovery from Defendant. (*See generally* Notice of Removal, Docket Entry No. 1.) Defendant moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, seeking dismissal of the complaint on the basis that Plaintiff has not sustained a serious injury as defined by Section 5102(d). (Notice of Motion for Summ. J., Docket Entry No. 21; Mem. of Law ("Def.'s Mem."), Docket Entry No. 22.) Plaintiff opposes. (Mem. of Law in Opp'n to Motion for Summ. J. ("Pl.'s Mem."), Docket Entry No. 25.) For the reasons set forth below, Defendant's motion for summary judgment is denied.

## BACKGROUND

On August 31, 2010, Plaintiff was working for the New York City Police Department Traffic Enforcement Division as a traffic agent. (Pl.'s Mem. Ex. A ¶ 2.) His assigned post was near the U.S. Tennis Open, in Flushing, New York on Meridian Road off of an exit from the

Grand Central Parkway. (Aff. in Support at 1, Docket Entry No. 21.) Defendant was driving a vehicle in stop-and-go traffic at the exit where Plaintiff was directing traffic. (Pl.'s Mem. Ex. A ¶ 2.) As Defendant drove by Plaintiff, Plaintiff's left foot was run over by Defendant's vehicle. (*Id.*) Plaintiff claims that as a result of Defendant's vehicle coming into contact with Plaintiff's foot, he fell onto the ground. (*Id.* at ¶ 3.) Plaintiff claims he suffers from severe injuries to his neck, both shoulders, and left ankle and foot as a result of this incident. (*Id.* at ¶ 16.) Summaries of the relevant medical records, testimony, and evidence are further detailed below.

I. **Relevant Medical Examinations**

After falling to the ground, Plaintiff was transported by an ambulance to New York Hospital of Queens. While at the emergency room, Plaintiff's left foot and ankle were examined. (Def.'s Mem. Ex. F at 10, Docket Entry No. 22-7.) An x-ray was performed and indicated that there was no fracture and the x-ray impression was "no injury seen." (*Id.* at 6.) Throughout the emergency room records a left foot crush injury and ankle sprain are mentioned. (*See generally* Def.'s Mem. Ex. F.) There is no mention of the Plaintiff's alleged shoulder or neck injuries in the emergency room records. There are two references to the Plaintiff's back under the section "Physical Examination," which covers categories such as "general appearances." (*Id.* at 9, 16.) After "Back," the emergency room report provides "Within normal limits. Nontender. Normal range of motion. Normal alignment." (*Id.*) The Plaintiff was discharged from the emergency room the same day, prescribed acetaminophen-oxycodone, given an Ace bandage and crutches, and instructed to follow-up with an orthopedic doctor. (*Id.* at 16.)

On September 3, 2010, Plaintiff visited Dr. Robert Donadt. (Pl.'s Mem. Ex. A ¶ 11.) Dr. Donadt examined Plaintiff's cervical spine, bilateral shoulders, and left foot and ankle. (Pl.'s Mem. Ex. B ¶¶ 2-5.) According to Dr. Donadt, Plaintiff suffered a cervical spine sprain, bilateral

shoulder contusion, left ankle sprain, and left foot crush injury. (*Id.* at ¶ 6.) Dr. Donadt recommended continued use of pain medication, as well as, physical therapy. (*Id.* at ¶ 7.)

On October 4, 2010, Dr. Donadt diagnosed Plaintiff with "cervical spine sprain, possible radiculopathy, bilateral shoulder contusion, possible rotator cuff tear right worse than left, left ankle sprain, left foot crushed injury." (*Id.* at ¶ 10.)

On September 28, 2011, an MRI of Plaintiff's right shoulder "revealed tendinopathy of the supraspinatus and infraspinatus tendons, the anteroinferior aspect of the labrum is not clearly identified and appears diminutive suggestive of a labral tear." (*Id.* at ¶ 13.) As of September 28, 2011, Dr. Donadt's diagnosis was "cervical spine strain; possible radiculopathy; bilateral shoulder contusion, right worse than left and associated with right labral tear, tendonitis, bursitis and impingement as well as left ankle/foot sprain; and left foot crush injury." (*Id.*) Dr. Donadt recommended surgery for the right shoulder and continued physical therapy. (*Id.*)

On November 28, 2011, Plaintiff was examined by Dr. Edward Crane. (Def.'s Mem. Ex. G at 1, Docket Entry No. 22-8.) At the examination, Plaintiff complained of left foot pain, intermittent right shoulder pain, and occasional lower back discomfort. (*Id.*) Dr. Crane found that the "[r]ange of motion of his neck was complete and pain-free" and that "[h]e had no posterior cervical tenderness or spasm." (*Id.* at 2.) Dr. Crane also noted that the Plaintiff's range of motion for the right and left shoulder were "complete" and "pain-free." (*Id.*) Additionally, Dr. Crane found that the left foot and ankle range of motion matched the right and was "complete" and "pain-free." (*Id.* at 3.) His report included other observations and concluded "I found no objective evidence of any orthopedic residuals from the incident of 8/31/10. He does not required [sic] any further treatment, his prognosis is excellent." (*Id.*)

On May 1, 2012, Dr. Donadt conducted a range of motion study for Plaintiff's cervical

spine, right and left shoulders, and left ankle. (Pl.'s Mem. Ex. B at ¶¶ 16-18.) According to Dr. Donadt, Plaintiff's mobility was limited by 5 to 30 degrees compared to the "norm." (*Id.*)

On July 16, 2012, Dr. Donadt performed surgery at the Forest Hills Hospital on Plaintiff's right shoulder. (*Id.* at ¶ 22.) The surgery was a right shoulder arthroscopy, labral debridement, synovectomy, subacromial decompression with acromio plasty and bursectomy. (*Id.*) At the time of the filing of the opposition papers, according to Dr. Donadt, the results of the surgery were unknown. (*Id.* at ¶ 23.)

Dr. Donadt generally states:

> It was my expert medical opinion that the injuries as diagnosed were casually [sic] related to the motor vehicle accident of August 31, 2010 and said findings were consistent with the clinical presentation in my office. It was also my expert medical opinion that the injuries as diagnosed will continue to inhibit the patient's ability to carry out his normal activities of daily living consistent with sitting, standing, bending, walking, lifting and other strenuous physical activities. Further it is my expert medical opinion that the need for surgery to the right shoulder is necessitated as a result of the subject accident. It is my expert medical opinion that said injuries are permanent in nature.

(*Id.* at ¶ 20.)

## II. Relevant Testimony, Witness Statements and Other Evidence

A witness of the incident, Karen Lloyd, who is a non-party, gave a statement to police on the day of the accident and has since given testimony under oath about that day. (Def.'s Mem. Ex. E 10:10-12, Docket Entry No. 22-6.) According to Ms. Lloyd, Plaintiff intentionally stuck his foot under Defendant's car. (*Id.* at 11:11-19, 27:10-20.) Ms. Lloyd explained that the way he was standing was so odd that she thought it was comical and that after the incident she assumed he was going to start laughing with his friends. (*Id.* at 11:15-19, 38:6-15.) Plaintiff states that he did not intentionally have his foot come into contact with Defendant's vehicle. (Pl.'s Mem.

4

Ex. A ¶ 3.)

According to Plaintiff, he missed four months and four days of work following the incident. (*Id.* at ¶ 15.) He claims that he was bedridden for one month and confined to his house for the remaining three months due to his injuries. (*Id.*) Defendant submitted Plaintiff's Absence and Tardiness Records from the New York City Police Department. (Def.'s Mem. Ex. H, Docket Entry No. 22-9.) The indications on the weekdays from September 1, 2010 through September 10, 2010 are unclear. (*Id.*) The records do not indicate an absence from work from September 13, 2010 through October 31, 2010, with the exception of weekends, which are marked with an "X" that indicates a regular day off, and October 11, 2010, which has a "□" that indicates a legal holiday. (*Id.*) According to the absence report for 2010, Plaintiff was out of work from November 1, 2010 through December 25, 2010. (*Id.*) Each of the days during this period is marked with an "X," a "□," or a "V" that indicates annual leave. (*Id.*) The last week of December 2010 is coded with "M," which indicates a "MELD Transfer." (*Id.*)

Plaintiff currently is working directing traffic. (Pl.'s Mem. Ex. A ¶ 15.) Plaintiff claims that directing traffic is light duty and that he cannot return to his "main duties of ticket-writing." (*Id.*) He claims that he still feels pain in his neck, shoulders, and left foot and ankle. (*Id.* at ¶ 16.) According to Plaintiff, since the accident, he has been unable to participate in the activities that he normally engaged in such as standing, walking, sitting, lifting objects, running, and exercising due to the pain from his injuries. (*Id.* at ¶ 19.)

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a). "In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotations omitted). A fact is "material" within the meaning of Rule 56 when its resolution "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. To determine whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir. 1995) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam) and *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir. 1989)). "[T]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The moving party bears the burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrates the absence of a genuine issue of fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotations omitted). Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis omitted). The nonmoving party must offer "concrete evidence from which a reasonable juror could return a verdict in [its] favor." *Anderson*, 477 U.S. at 256. The nonmoving party may not "rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible, or upon the mere allegations or denials of the nonmoving party's pleading." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 532-33 (2d Cir. 1993) (citations and internal quotations omitted). "Summary judgment is appropriate only '[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 141 (2d Cir. 2012) (quoting *Matsushita*, 475 U.S. at 587).

## II. No-Fault Law

New York's No-Fault Law was enacted "with the objective of promoting prompt resolution of injury claims, limiting cost to consumers and alleviating unnecessary burdens on the courts." *Pommells v. Perez*, 4 N.Y.3d 566, 570-71 (2005). With respect to motions for summary judgment under the "serious injury" provisions of the No-Fault Law, the following burden-shifting scheme applies:

> on summary judgment, a defendant must establish a prima facie case that plaintiff did not sustain a "serious injury" within the meaning of Insurance Law § 5102(d). In support of its argument that there is no such serious injury, defendant may rely on the unsworn reports by plaintiff's physicians, but must provide evidence from its own physicians in the form of sworn affidavits. Once a defendant's burden is met, the plaintiff is then required to establish a prima facie case that he sustained a serious injury. For plaintiff to defeat a summary judgment motion, admissible evidence must be presented in the form of sworn affidavits by physicians.

*Luo v. Mikel*, 625 F.3d 772, 777 (2d Cir. 2010) (quoting *Barth v. Harris*, 2001 WL 736802, at *2 (S.D.N.Y. June 25, 2001)).

A plaintiff "must present objective proof of injury, as subjective complaints of pain will not, standing alone, support a claim for serious injury." *Id.* (quoting *Son v. Lockwood*, 2008 WL 5111287, at *5-6 (E.D.N.Y. Nov. 26, 2008)). Additionally, "when additional contributory factors interrupt the chain of causation between the accident and claimed injury—such as a gap in treatment, an intervening medical problem or a preexisting condition—summary dismissal of the complaint may be appropriate." *Pommells*, 4 N.Y.3d at 572.

Under the No-Fault Law, a plaintiff is precluded from recovering for non-economic loss resulting from a motor vehicle accident unless the plaintiff has suffered a "serious injury," defined as:

> personal injury which results in death; dismemberment; significant disfigurement; a fracture; loss of a fetus; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment.

N.Y. Ins. Law § 5102(d).

As to "permanent consequential limitation of use of a body organ or member" or "significant limitation of use of a body function or system," the New York Court of Appeals has stated that "[w]hether a limitation of use or function is 'significant' or 'consequential' (*i.e.*, important) relates to medical significance and involves a comparative determination of the degree or qualitative nature of an injury based on the normal function, purpose and use of the body part." *Toure v. Avis Rent A Car Sys., Inc.*, 98 N.Y.2d 345, 353 (2002) (citation omitted); *see also Alvarez v. E. Penn Mfg. Co.*, 2012 WL 4094828, at *4 (S.D.N.Y. Sept. 17, 2012) ("The

cases also commonly find that if a party raises a genuine dispute of material fact as to whether the injury is a 'permanent consequential limitation of use,' it will also have raised a genuine dispute of material fact as to whether the injury is a 'significant limitation of use.'")

And as to a "medically determined injury or impairment of a non-permanent nature which prevents the [plaintiff] from performing substantially all of the material acts which constitute [his] usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment" (the "90/180 day category"), "the words 'substantially all' should be construed to mean that the person has been curtailed from performing his usual activities to a great extent rather than some slight curtailment." *Licari v. Elliott*, 57 N.Y.2d 230, 236 (1982).

## III.  Application

In support of her motion for summary judgment, Defendant submitted a sworn letter from Dr. Crane[1] and relied on Plaintiff's emergency room records.[2] The emergency room records indicate there was no fracture to the left foot or ankle and the general impression of the x-ray was that no injury was seen. (Def.'s Mem. Ex. F at 6.) The emergency room reports are void of any mention of an injury to Plaintiff's back, neck or shoulders. Additionally, Dr. Crane's examination of Plaintiff 15 months after the accident showed normal range of motion for Plaintiff's left foot and ankle, neck, and shoulders. (Def.'s Mem. Ex. G at 2-3.) Dr. Crane found, "no objective evidence of any orthopedic residuals from the incident of 8/31/10" and

---

[1] While Dr. Crane's submission was not in the form of a sworn affidavit as required by the Second Circuit, *see, e.g.*, *Luo*, 625 F.3d at 777, since the Court finds there is a triable issue of fact it need not discuss the admissibility of this document and assumes sufficiency for purposes of this decision.

[2] Defendant also relies on Ms. Lloyd's testimony regarding Plaintiff's intent; however, in light of Plaintiff's statements to the contrary, the testimony from both individuals requires weighing credibility, which is properly left for the trier of fact. *Augustine v. Hee*, 161 Fed. Appx. 77, 79 (2d Cir. 2005) (citing *Lipton v. Nature Co.*, 71 F.3d 464, 472 (2d Cir. 1995) for proposition that "'[d]eterminations of credibility are within the province of the jury and may not be resolved on summary judgment'").

noted "[h]e does not required [sic] any further treatment, his prognosis is excellent." (*Id.* at 3.) This evidence is sufficient to establish a prima facie case on a motion for summary judgment to shift the burden to Plaintiff to show that he sustained a serious injury within the meaning of the No-Fault Law. *Luo*, 625 F.3d at 777 (finding evidence indicating normal to minimal limitation on range of motion sufficient to shift burden).

In response, Plaintiff submitted a sworn affirmation of Dr. Donadt, his treating physician who has continued to see and treat him since the accident. (Pl.'s Mem. Ex. B ¶ 9.) According to Dr. Donadt, Plaintiff does not have full range of motion in his cervical spine, shoulders, and left ankle. (*Id.* at ¶¶ 16-18.) Dr. Donadt performed surgery on Plaintiff's right shoulder but the effectiveness is still unknown. (*Id.* at ¶ 22.) He claims Plaintiff's injuries "will continue to inhibit the patient's ability to carry out his normal activities of daily living consistent with sitting, standing, bending, walking, lifting and other strenuous physical activities" and he opines that the injuries were causally related to the accident. (*Id.* at ¶ 20.) "Taken together with Plaintiff's subjective evidence as to the impact of the injury on [his] functioning, this is sufficient evidence to raise a question of fact issue as to serious injury pursuant to N.Y. Ins. Law § 5104(a)." *Luo*, 625 F.3d at 778.

Plaintiff has also raised a triable issue of fact regarding whether his injury was serious under the 90/180 day category. While Defendant claims Plaintiff did not miss at least 90 days of work in the first 180 days following the accident and that Plaintiff was conducting regular activities such as walking his child to school, Plaintiff provides a different picture. According to Plaintiff, he missed four months and four days of work and was unable to perform the acts consisting of his usual and customary daily activities. And while there is no indication in the record that a doctor told him to stay home, Dr. Donadt stated that, "Mr. Gomes was totally

disabled from his normal course of employment as a traffic agent and was disabled and unable to resume that course of employment until January 2011 when he returned to work." (Pl.'s Mem. Ex. B ¶ 11.) This contradiction creates a genuine issue of triable fact, not appropriate for a decision at the summary judgment stage of a case. Therefore, Defendant's motion for summary judgment is denied.

## CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment is denied.

SO ORDERED.

Dated: Brooklyn, New York
September 30, 2013

/s/
DORA L. IRIZARRY
United States District Judge